**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel:  (973) 848-4000
Fax:  (973) 848-4001
*Attorneys for Plaintiff*
*IJKG Opco LLC, d/b/a*
*CarePoint Health -- Bayonne Medical Center*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IJKG OPCO LLC, d/b/a CAREPOINT HEALTH - BAYONNE MEDICAL CENTER, | Civil Action No.: |
| Plaintiff, | |
| v. | |
| GENERAL TRADING COMPANY, CONSOLIDATED HEALTH PLANS INC., CIGNA CORPORATION, INC., ZELIS HEALTHCARE, INC. A/K/A PREMIER HEALTH EXCHANGE, INC., FIRST CHOICE INSURANCE SERVICES, L.L.C., AND STANDARD SECURITY LIFE INSURANCE COMPANY OF NEW YORK, | **COMPLAINT** |
| Defendants. | |

Plaintiff IJKG Opco LLC, d/b/a CarePoint Health -- Bayonne Medical Center ("Plaintiff or "BMC"), through its attorneys, K&L Gates LLP, files this Complaint against Defendants, General Trading Company ("General Trading"), Consolidated Health Plans, Inc.. ("CHP"), Cigna Corporation, Inc. ("Cigna"), Zelis Healthcare, Inc. a/k/a Premier Health Exchange, Inc. ("PHX"), First Choice Insurance Services, L.L.C. ("First Choice"), and Standard Security Life Insurance Company of New York ("SS Life") (collectively, "Defendants"), and hereby alleges:

## SUMMARY OF CLAIMS

1.      BMC operates a community hospital located at 29th Street at Avenue E, Bayonne, New Jersey 07002.

2.      From November 2, 2014, until November 23, 2014, BMC provided emergent medically necessary treatment to a patient insured by General Trading (hereinafter "Patient 1"). Patient 1 presented to BMC's Emergency Department with symptoms of acute renal failure, was admitted to the hospital, and continued to receive medically necessary treatment from BMC for 21 consecutive days thereafter.

3.      For her stay and the medically necessary care she received at BMC, Patient 1 incurred total charges in the amount of $771,191.58.

4.      Upon information and belief, of that amount, General Trading, as Patient 1's insurer, is required to reimburse BMC, as Patient 1's assignee, for their total billed charges, less applicable in-network patient responsibility, for emergency/urgent care that BMC provided to Patient 1 under the Plan of Benefits sponsored by General Trading ("Plan").

5.      Upon information and belief, the Plan is not a grandfathered plan under the Patient Protection and Affordable Care Act ("ACA").

6.      However, to date, General Trading, CHP (the Plan's claims administrator), Cigna (the Plan's insurer), PHX (the claims contract negotiator), First Choice (the Plan's insurance broker) and SS Life (the Plan's reinsurance company), have refused to reimburse BMC more than $175,358.05, leaving an unpaid balance due under the Plan of at least $595,833.53.

7.      Moreover, as set forth more fully below, Defendants have refused to provide BMC any meaningful avenue of review of General Trading's underpayments.

8.      As described more fully below, Defendants' failure and refusal to pay BMC its full charges for the services rendered to Patient 1 violates the terms of the Plan.  Moreover, Defendants' recoupments of amounts previously paid to BMC violates the terms of the Plan as well as BMC's rights under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

9.      Accordingly, BMC, as Patient 1's assignee, brings this action against Defendants under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to recover the benefits due to BMC under the Plan for the treatment that BMC provided to Patient 1.

10.     BMC also brings claims against Defendants for other appropriate relief, including equitable and injunctive relief, pursuant to ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), to remedy Defendants' other violations of ERISA, including their violations of their fiduciary duties owed to BMC and their duty to afford BMC a full and fair review of their unlawful denials and recoupment practices.

### THE PARTIES

11.     Plaintiff BMC is a limited liability company organized under the laws of the State of New Jersey.  BMC operates a licensed general acute care hospital doing business as CarePoint Health -- Bayonne Medical Center, located at 29th Street at Avenue E, Bayonne, New Jersey 07002.

12.     Defendant General Trading is an employee welfare benefits plan within the meaning of 29 U.S.C. § 1002(2)(A), with its principal place of business located at 455 16th Street, Carlstadt, New Jersey 07072.  General Trading's Plan provides medical benefits and dental benefits for its members.

13.     Defendant CHP is a corporation of the State of Massachusetts with its principal place of business located at 2077 Roosevelt Avenue, Springfield, MA, 01104.  CHP is the third-Party plan administrator for the Plan, and, together with Cigna, jointly administers the General Trading Plan.

14.     Defendant Cigna is a corporation of the State of Delaware with its principal place of business located at 900 Cottage Grove Road, Wilde Building, Bloomfield, CT 06152, and a registered agent located at CT Corporation System, One Corporate Center, Hartford, CT 06103-3220.  Cigna is the claims administrator for the General Trading Plan.

15.     Defendant PHX is New Jersey Corporation with a principal place of business located at 2 Crossroads Drive, Bedminster, NJ 07921.

16.     Defendant First Choice is a New Jersey limited liability corporation with a principal place of business located at 573 Valley Road Suite 7, Wayne, NJ 07470.

17.     Defendant SS Life is a wholly owned subsidiary of Independence Holding Company, with its principal place of business located at 485 Madison Avenue, 14th floor New York, NY  10022-5872, and a registered agent located at CT Corporation System, 111 Eighth Ave., New York, NY 10011.

## JURISDICTION AND VENUE

18.     The Court has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1332(a), as this is a civil enforcement action under ERISA.

19.     This Court has personal jurisdiction over the Defendants because, at all times material hereto, Defendants carried on one or more businesses or business ventures in this

judicial district; there is the requisite nexus between the business(es) and this action; and

Defendants engaged in substantial and not isolated activity within this judicial district.

20.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2),

because a substantial portion of the events giving rise to this action arose in this judicial district.

## FACTUAL ALLEGATIONS

### A.     Patient 1 Receives Extensive Life-Saving Emergent Treatment at BMC for 31 Continuous Days

21.     From November 2, 2015, until November 23, 2015, BMC provided emergent

medically necessary treatment to a patient insured by General Trading (hereinafter "Patient 1").

Patient 1 presented to BMC's Emergency Department on November 2, 2015, and after testing

revealed abnormally elevated levels of Creatine and Potassium, admitted to BMC as an inpatient

with a primary diagnosis code of 584.9, acute renal failure. Patient 1 continued to receive

medically necessary treatment from BMC until her discharge on November 23, 2015.

22.     Patient 1 was an inpatient at BMC for 21 consecutive days, until November 23,

2015, during which time she received extensive and medically necessary care, including testing

to determine the progression of Patient 1's kidney disease, and to stabilize her abnormal levels of

Blood Urea Nitrogen and Creatine. Patient 1 was also diagnosed with Goodpasture Syndrome

subsequent to acute renal failure.  Patient 1's treatment also required intervention, including

plasmaphereisis and hemodiaysis.  Patient 1's extensive and medically necessary care resulted in

total incurred charges in the amount of $771,191.58.

### B.     Defendants Substantially Underpay BMC for the Life-Saving Treatment Provided to Patient 1

23.     BMC is a 278-bed, fully accredited, acute care hospital that provides quality,

comprehensive, community-based health care services to more than 70,000 people annually.  Its

facilities include 19 full-service emergency room bays, 205 medical/surgical beds, 10 obstetrical beds, 17 pediatric beds, 14 adult ICU/CCU beds, and 15 adult, acute psychiatric beds.  The service complement consists of six inpatient operating rooms, two cystoscopy rooms, one full-service cardiac catheterization lab, 12 chronic hemodialysis stations, one MRI unit, emergency angioplasty services, elective angioplasty, two hyperbaric chamber unites, and a PET-CT diagnostic imaging unit.

24.     BMC and the independent physicians attending to patients at the hospital are required by law to provide emergency/urgent care to any patient regardless of the patient's ability to pay and regardless of source of insurance payment.  A patient's ability to pay in no way affects or impedes BMC's delivery of emergency health care.

25.     Patient 1 is a beneficiary of General Trading's Plan.  Upon information and belief, the Plan provides coverage for "in-network benefits" for "preferred providers" and for "out-of-network benefits" for "nonpreferred providers" with Cigna.  BMC is an out-of-network provider with respect to Cigna and a "nonpreferred provider" within the meaning of the Plan.

26.     Upon information and belief, Patient 1's Plan requires reimbursement of medical expenses incurred by Patient 1 for her total billed charges, less applicable in-network patient responsibility, for emergency/urgent care that the BMC provided to Patient 1.

27.     29 CFR Section 2590.715-2719A(b)(3)(i) provides that in order for a plan to satisfy the co-payment and co-insurance limitations, for out-of-network emergency medical services under the ACA, it must provide benefits for out-of-network emergency services in the amount equal to the greatest of the following three possible amounts:  (1) the amount negotiated with in-network providers for the emergency service furnished taking into account the in-network co-payment and co-insurance obligations; (2) the amount for the emergency service

calculated using the same method the plan generally uses to determine payments for out-of-network services (such as the usual, customary and reasonable charges) but substituting the in-network cost-sharing provisions for the out-of-network cost-sharing provisions; or (3) the amount that would be paid under Medicare for the emergency service, taking into account the in-network co-payment and co-insurance obligations.

28.     However, to date, General Trading, through the remaining Defendants, refuse to reimburse BMC more than $175,358.05, leaving an unpaid balance due under the terms of the Plan of at least $595,833.53.

29.     In an explanation of benefits ("EOB") issued by CHP dated January 29, 2014, CHP provided reason codes and a legend for the disallowed charges, without explaining the bases for the reason codes as applied to BMC's charges related to services provided to Patient 1. The majority of disallowed services used a reason code of "2" for "[a] discount was negotiated through Premier Healthcare Exchange" or "3" for "[e]xceeds reasonable and customary charge."

30.     Then, on November 26, 2014, BMC received a letter from PHX stating that "[t]he Payor has forwarded your letter for additional payment dated November 7, 2014 for our review and consideration."   The November 26 letter further stated that the charges were paid in accordance with the Plan and that PHX was further reducing the bill by the outstanding $590,205.72.

31.     In the meantime, BMC timely filed a first level appeal with CHP on or about November 18, 2014.  On January 6, 2015, CHP denied the appeal in its entirety and directed BMC to balance bill Patient 1 for the outstanding amount.

32.     BMC then timely faxed a second-level appeal to CHP on January 13, 2015.  On February 9, 2015, BMC followed up with CHP by telephone on the status of the appeal for

additional payment.  The CHP representative advised BMC that appeals had to be filed directly with PHX.  The CHP representative also stated that while General Trading was a self-funded Plan that used the Cigna network, CHP was the Plan payor and administrator, and PHX was CHP's third-party re-pricing company.  The CHP representative stated that Patient 1's claim was paid by CHP based on the out-of-network coverage provided by the Cigna network and that no further payment would be made.

33.     On February 23, 2015, BMC received a letter from CHP in response to its "recent inquiry made on January 2015."  The letter stated that "[b]ased on the Plan benefits and policy language it has been determined that the above listed claim was paid appropriately and no additional payment shall be made."  The February 23 letter cited to the alleged Plan language supporting this contention:

*Emergency Services*

*With respect to an emergency medical condition, a medical screening examination that is within the capability of the **emergency department** of a hospital, including ancillary services routinely available to the **emergency department** to evaluate such emergency medical condition, and such further medical examination and treatment, to the extent they are within the capabilities of the staff and facilities available at the hospital, as are required to stabilize the patient.*

34.     The letter then stated that:

The above listed claim processed at:

Emergency charges were paid at 100% (subject to negotiated rate if applicable, otherwise % of customary and reasonable amount.)

Inpatient Hospital charges were paid at 50% Nonpreferred Provider (% of customary and reasonable amount.) $5627.81 coinsurance amount.

Nothing cited to by CHP in the February 23 letter justifies the less than 25% of the total charges reimbursed by CHP for the emergent medically necessary services provided to Patient 1 by BMC.

**C.     BMC Receives a Complete Assignment of Health Insurance Benefits for the Treatment Provided to Patient 1**

35.     Patient 1 executed a valid "Assignment of Benefits" ("AOB") form that, among other things, states as follows:

> I HEREBY ASSIGN TO THE HOSPITAL, ALL OF MY RIGHTS, BENEFITS, PRIVILEGES, PROTECTIONS, CLAIMS, CAUSES OF ACTION, INTERESTS OR RECOVERY, TO ANY AND ALL RIGHTS, BENEFITS, PRIVILEGES, PROTECTIONS, CLAIMS, CAUSES OF ACTIONS, INTERESTS, OR RECOVERY OF ANY TYPE WHATSOEVER RECEIVABLE BY ME OR ON MY BEHALF ARISING OUT OF ANY POLICY OF INSURANCE, PLAN, TRUST, FUND, OR OTHERWISE PROVIDING HEALTH CARE COVERAGE OF ANY TYPE TO ME (OR TO ANY OTHER THIRD PARTY RESPONSIBLE FOR ME) FOR THE CHARGES FOR SERVICE RENDERED TO ME BY THE HOSPITAL. THIS INCLUDES, WITHOUT LIMITATION, ANY PRIVATE OR GROUP HEALTH/HOSPITALIZATION PLAN. AUTOMOBILE LIABILITY, GENERAL LIABILITY, PERSONAL INJURY PROTECTION, MEDICAL PAYMENTS, UNINSURED OR UNDERINSURED MOTOR VEHICLES BENEFITS, SETTLEMENTS/JUDGMENTS/VERDICTS, SELF-FUNDED PLAN, TRUST, WORKERS COMPENSATION, MEWA, COLLECTIVE, OR ANY OTHER THIRD-PARTY PAYOR PROVIDING HEALTH CARE COVERAGE OF ANY TYPE TO ME (OR TO ANY OTHER THIRD PARTY RESPONSIBLE FOR ME) FOR THE CHARGES FOR SERVICES RENDERED TO ME BY THE HOSPITAL [COLLECTIVELY, 'COVERAGE SOURCE']. **THIS IS A DIRECT ASSIGNMENT OF ANY AND ALL OF MY RIGHTS TO RECEIVE BENEFITS ARISING OUT OF ANY COVERAGE SOURCE.** I UNDERSTAND THAT THIS ASSIGNMENT OF BENEFITS IS IRREVOCABLE. THIS ASSIGNMENT OF BENEFITS FULLY AND COMPLETELY ENCOMPASSES ANY LEGAL CLAIM I MAY HAVE AGAINST ANY COVERAGE SOURCE, INCLUDING, BUT NOT LIMITED TO, MY RIGHTS TO APPEAL ANY DENIAL OF BENEFITS ON MY BEHALF, TO REQUEST AND OBTAIN PLAN DOCUMENTS, TO PURSUE LEGAL ACTION AGAINST ANY COVERAGE SOURCE, AND/OR TO FILE A COMPLAINT WITH THE NEW JERSEY DEPARTMENT OF BANKING AND INSURANCE.
>
> I AUTHORIZE AND DIRECT PAYMENT BE MADE BY ANY AND ALL COVERAGE SOURCE DIRECTLY TO THE HOSPITAL OF ALL BENEFITS,

PAYMENTS, MONIES, CHECKS, FUNDS, WIRE TRANSFERS OR RECOVERY OF ANY KIND WHATSOEVER FROM ANY COVERAGE SOURCE. I ALSO AGREE TO ASSIST THE HOSPITAL IN PURSUING PAYMENT FROM ANY COVERAGE SOURCE. THIS INCLUDES, WITHOUT LIMITATION, SIGNING DOCUMENTS REQUESTED OR NEEDED TO PURSUE CLAIMS AND APPEALS, GETTING DOCUMENTS FROM COVERAGE SOURCE, OR OTHERWISE TO SUPPORT PAYMENT TO THE HOSPITAL. I ALSO DIRECT AND AGREE THAT ANY PAYMENTS OF ANY KIND (E.G., CHECKS, FUNDS, PAYMENTS, MONIES, BENEFITS OR RECOVERY FOR COVERAGE OF SERVICES BY THE HOSPITAL THAT IS SENT DIRECTLY TO ME (OR TO ANOTHER THIRD PARTY RESPONSIBLE FOR ME) WILL BE SENT AND TURNED OVER IMMEDIATELY BY ME TO THE HOSPITAL, THROUGH WHATEVER MEANS NECESSARY.   THIS INCLUDES, WITHOUT LIMITATION, ME AND IF NEEDED ANY GUARDIAN ENDORSING OVER ANY CHECKS AND/OR OTHER DOCUMENTS TO THE HOSPITAL.  I ALSO UNDERSTAND THAT IF I FAIL TO TURN OVER TO THE HOSPITAL ANY SUCH PAYMENTS SENT DIRECTLY TO ME (OR TO ANOTHER THIRD PARTY RESPONSIBLE FOR ME), I WILL BE FINANCIALLY RESPONSIBLE TO THE HOSPITAL FOR THE AMOUNT OF SUCH PAYMENTS, AND I MAY ALSO BE SUBJECT TO CRIMINAL PROSECUTION TO THE FULLEST EXTENT PERMITTED BY LAW.

I HEREBY AUTHORIZE AND DESIGNATE THE HOSPITAL, AS MY AUTHORIZED AGENT AND REPRESENTATIVE TO ACT ON MY BEHALF WITH RESPECT TO ALL MATTERS RELATED TO ALL OF MY RIGHTS, BENEFITS, PRIVILEGES, PROTECTIONS, CLAIMS, CAUSES OF ACTION, INTERESTS OR RECOVERY ARISING OUT OF ANY COVERAGE SOURCE. THIS INCLUDES, WITHOUT LIMITATION, THE HOSPITAL REQUESTING         VERIFICATION         OF         COVERAGE/PRE-CERTIFICATION/AUTHORIZATION, FILING PRE-SERVICE AND POST-SERVICE CLAIMS AND APPEALS, RECEIVING ALL INFORMATION, DOCUMENTATION, SUMMARY PLAN DESCRIPTIONS, BARGAINING AGREEMENTS, TRUST AGREEMENTS, CONTRACTS, AND ANY INSTRUMENTS UNDER WHICH THE PLAN IS ESTABLISHED OR OPERATED, AS WELL AS RECEIVING ANY POLICIES, PROCEDURES, RULES, GUIDELINES, PROTOCOLS OR OTHER CRITERIA CONSIDERED BY THE COVERAGE SOURCE, IN CONNECTION WITH ANY CLAIMS, APPEALS, OR NOTIFICATIONS RELATED TO CLAIMS OR APPEALS.

36.     In this case, in addition to the "Assignment of Benefit" form referenced above,

Patient 1 also expressly authorized BMC and its affiliates as her authorized representative to

appeal any adverse benefits determination on Patient 1's behalf with respect to the services that BMC provided to Patient 1.

37.    At no time did Defendants refuse to communicate with BMC or its affiliates regarding Patient 1's claim based on an invalid AOB or failure to authorize BMC as Patient 1's authorized representative.

**D.    BMC Exhausts All Known and Available Internal Appeals Remedies**

38.    BMC has exhausted all known and available appeals avenues under the Plan in an effort to convince Defendants to reimburse BMC properly on its claims for the extensive treatment that BMC provided to Patient 1.  So far, all of these appeals avenues have been unsuccessful.

39.    Specifically, by letter dated March 3, 2015 (the "Appeal Letter"), BMC timely appealed CHP's February 23, 2015, adverse benefit determination, challenging PHX's claim reduction and assignment of $595,833.53 of Patient 1's claim for emergency medically necessary charges to patient responsibility.  (See Exhibit D attached hereto).

40.    In response, CHP informed BMC that it was no longer the administrator for the General Trading Plan and to contact the Plan directly.  Accordingly, BMC's billing company, Specialized Healthcare Partners, sent General Trading's owner, Douglas Boyle, a letter dated August 11, 2015, explaining that the claim was appealed to General Trading's plan administrator, CHP, but that CHP informed them that CHP was no longer handling General Trading's account.  The August 11 letter enclosed BMC's appeal of Patient 1's claim.

41.    On September 9, 2015, Mr. Boyle sent Cigna a letter, stating that BMC was appealing a large claim and "as the plan administrator for the insured, General Trading

Company, I am trying to find someone to handle this appeal as both Consolidated Health Plans and the broker, First Choice, will not return my calls or get involved in this process."

42.    On June 3, 2016, BMC again tried to contact General Trading to request that its appeal be adjudicated.  In response, in an e-mail exchange with Mr. Boyle on June 20, 2016, Mr. Boyle stated that the claim was properly handled through the proper channels by the other Defendants and that BMC should contact them to request additional refunds.

43.    Mr. Boyle also stated that Patient 1 and General Trading paid their deductibles and co-pays in full and were not responsible for the remaining balance.

Mr. Boyle stated that the Plan was self-funded with an individual stop-loss limit of $50,000 and therefore, had no exposure above that amount.  He again reiterated that BMC re-submit the bill to the other Defendants, namely, SS Life and Cigna.

44.    In a final attempt to seek additional reimbursement on Patient 1's claim, BMC e-mailed Mr. Boyle again on August 23, 2016.  Mr. Boyle asked BMC again whether it had contacted his insurance companies.  BMC indicated that it had, however, they directed BMC to contact the Plan.  Mr. Boyle restated that General Trading had reached its deductible with the carrier and that the carrier would have to negotiate with BMC in order for BMC to receive further payment.

45.    To date, BMC's March 23, 2015 Appeal Letter has not been adjudicated and BMC has received no additional payment of the $590,205.72 outstanding on Patient 1's claim.

46.    The conduct of all Defendants in their handling of BMC's claim on behalf of Patient 1 makes it abundantly clear that Defendants have absolutely no intention of complying with their obligations under the Plan, ERISA, the ACA, or any other applicable law, and that

further exhaustion efforts by BMC would be futile.  Thus, BMC is entitled to have this Court

undertake a *de novo* review of the issues raised herein.

47.     The instant action is timely commenced well within six years after BMC was

notified by Defendants that they were rejecting BMC's claims for reimbursement for the services

that BMC provided to Patient 1, within six years after each of Plaintiff's claims against

Defendants accrued, and is otherwise timely in all respects.

<u>**COUNT ONE**</u>
**(Violation of Section 502(a)(1)(B) – against General Trading, First Choice, SS Life and
Cigna)**

48.     BMC incorporates by reference all of the foregoing allegations as if set forth at

herein length.

49.     The Plan is an employee welfare benefits plan within the meaning of 29 U.S.C. §

1002(2)(A).

50.     General Trading, First Choice, SS Life and Cigna are the insurers, obligors,

fiduciaries, and/or relevant parties-in-interest for the Plan.

51.     CHP and PHX serve as the Plan Administrator and contract negotiator of the Plan.

52.     Under the terms of the Plan, Patient 1 is entitled to coverage for the services that

Patient 1 received from BMC.

53.     Patent 1 executed an "Assignment of Benefits" form, among other documents, in

which Patient 1 gave BMC a complete assignment of Patient 1's right to benefits under the Plan.

54.     A healthcare provider to whom a patient assigns benefits has standing to sue as a

"beneficiary" as "a person designated by a participant . . . who is or may become entitled to a

benefit" under an ERISA-governed plan.  29 U.S.C. § 1002(8).  ERISA further provides that a

"beneficiary" is entitled to institute litigation to collect benefits owed under a relevant ERISA-governed plan.  29 U.S.C. § 1132(a)(1)(B).

55.     When Patient 1 executed the "Assignment of Benefits" form, Patient 1 assigned to BMC her right to receive reimbursement from General Trading under the Plan for the services that BMC rendered to Patient 1.  This assignment of benefits confers upon BMC the status of a "beneficiary" under Section 502(a) of ERISA.  Thus, BMC has standing to bring this action under ERISA.

56.     As a beneficiary under Section 502(a) of ERISA, BMC is entitled to recover benefits due to BMC and/or its patients under the terms of the Plan.

57.     As a beneficiary under Section 502(a) of ERISA, BMC is entitled to enforce the rights of BMC and/or its patients under the terms of the Plan.

58.     As a beneficiary under Section 502(a) of ERISA, BMC is entitled to clarify its rights to future benefits under the terms of the Plan.

59.     The Plan expressly authorized Patient 1 to assign her rights to benefits under the Plan to BMC, including the right of direct payment of the Plan's benefits to BMC.

60.     In violation of ERISA, General Trading, First Choice, SS Life and Cigna failed to make payment of benefits to BMC, as assignee of Patient 1's rights under the Plan, in the manner and amounts required under the terms of the Plan.

61.     As the result of General Trading's, First Choice's, SS Life's and Cigna's violations of ERISA, BMC has suffered damages and lost benefits as assignee, for which it is entitled to restitution from General Trading, other declaratory and injunctive relief related to enforcement of the terms of the Plan, and to the clarification of future benefits.  General Trading, First Choice, SS Life and Cigna are liable to BMC for unpaid benefits, restitution, interest,

attorneys' fees, and other penalties as this Court deems just under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

<u>COUNT TWO</u>
**(Breach of Fiduciary Duty – against all Defendants)**

62.      BMC incorporates by reference all of the foregoing allegations as if set forth at herein length.

63.      As set forth more fully above, the Plan is an employee welfare benefits plan within the meaning of 29 U.S.C. § 1002(2)(A).

64.      General Trading, First Life, SS Life and Cigna are the insurers, obligor, fiduciary, and/or relevant party-in-interest for the Plan.

65.      CHP and PHX serve as the Plan Administrator and contract negotiator of the Plan.

66.      Under the terms of the Plan, Patient 1 is entitled to coverage for the services that Patient 1 received from BMC.

67.      As set forth more fully above, Patient 1 received health care services at BMC. Patient 1 executed an "Assignment of Benefits" form, among other documents, in which Patient 1 assigned to BMC Patient 1's right to benefits under the Plan.

68.      Defendants exercise discretionary authority or discretionary control relating to the management and/or administration of the Plan, and/or exercise authority and/or control respecting the management and disposition of the Plan's assets.  Accordingly, Defendants are all fiduciaries of the Plan within the meaning of 29 U.S.C. § 1002(21)(A).

69.      Defendants acted as fiduciaries to Patient 1 and BMC (as assignee), because they all exercised discretion in determining the nature of benefits that would be afforded to beneficiaries of the Plan, a key fiduciary function under ERISA.

70.     As fiduciaries of the Plan, Defendants owe the Plan beneficiaries -- including BMC as assignee of benefits – a duty to act for the exclusive purpose of providing benefits to participants and their beneficiaries; with the care, skill, prudence and diligence that a prudent administrator would use in the conduct of an enterprise of like character; and in accordance with the Plan documents.  29 U.S.C. § 1104(a)(1)(A), (B), (D).

71.     Defendants violated their fiduciary duties to the Plan beneficiaries – including BMC as assignee of benefits – by, among other things:  basing their reimbursement decisions on maximizing profits to Defendants rather than on the terms of the Plan and applicable statutes and regulations; failing to make decisions in the interests of beneficiaries; and failing to act in accordance with the Plan documents.

72.     In addition, Defendants violated their fiduciary duties to the Plan beneficiaries by, among other things, failing to inform BMC -- as assignee of benefits -- of material information, by misrepresenting requirements for reimbursement under the Plan, and imposing unduly burdensome preconditions to payment not contemplated by the Plan.

73.     As the result of Defendants' violations of their fiduciary duties to its beneficiaries – including BMC as assignee of benefits – BMC has suffered, and continues to suffer, substantial damages, for which it is entitled to appropriate equitable relief for the violations of  Defendants' fiduciary duties under 29 U.S.C. § 1132(a)(3).

### COUNT THREE
**(Denial of Full and Fair Review in Violation of ERISA  § 503 –
against all Defendants)**

74.     BMC incorporates by reference all of the foregoing allegations as if set forth at herein length.

75.     As an assignee and authorized representative of the claims on behalf of Patient 1, BMC is entitled to receive protection under ERISA, including (a) a "full and fair review" of all claims denied by Defendants; and (b) compliance by Defendants with applicable claims procedure regulations.

76.     Although Defendants are obligated to provide a "full and fair review" of denied claims pursuant to ERISA § 503, 29 U.S.C. § 1133 and applicable regulations, including 29 C.F.R. § 2560.503-1 and 29 C.F.R. § 2590.715-2719, Defendants have failed to do so by, among other actions:   refusing to provide the specific reason or reasons for the substantial underpayment on BMC's claims on behalf of Patient 1; refusing to provide the specific rule, guideline, or protocol relied upon in making the decision to deny or underpay these claims; refusing to describe any additional material or information necessary to perfect a claim; refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; refusing to provide a statement describing any appeals procedure available, or a description of all required information to be given in connection with that procedure and refusing to provide information necessary to enable BMC to ascertain the Plan's grandfathered status under the ACA.  By failing to comply with the ERISA claims procedures regulations, Defendants failed to provide a reasonable claims procedure.

77.     Because Defendants have all failed to comply with the substantive and procedural requirements of ERISA, any administrative remedies are deemed exhausted pursuant to 29 C.F.R. § 2560.503-1(l) and 29 C.F.R. § 2590.715-2719(b)(2)(ii)(F)(1).   Exhaustion is also excused because it would be futile to pursue administrative remedies, as Defendants do not

provide a clear basis for their denials and refuse to adjudicate Plaintiff's appeal. Defendants thus offer no meaningful administrative process for challenging their denials.

78.     BMC has been harmed by Defendants' failure to provide a full and fair review of appeals submitted under ERISA § 503, 29 U.S.C. § 1133, and by Defendants' failures to disclose information relevant to appeals, to comply with applicable claims procedure regulations, and to provide information needed to ascertain the Plan's grandfathered status under the ACA.

79.     BMC is entitled to relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including declaratory and injunctive relief, to remedy Defendants' failures to provide a full and fair review, to disclose information relevant to appeals and the Plan's grandfathered status under the ACA, and to comply with applicable claims procedure regulations.

## PRAYER FOR RELIEF

WHEREFORE, BMC demands judgment in its favor against Defendants as follows:

A.     Ordering Defendants to pay BMC the benefits due it, as Patient 1's assignee, under the terms of the Plan pursuant to § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B);

B.     Declaring that General Trading, First Choice, SS Life and Cigna have breached the terms of the Plan with regard to out-of-network benefits and awarding damages for unpaid out-of- network benefits, as well as awarding injunctive and declaratory relief to prevent Defendants' continuing actions detailed herein that are unauthorized by the Plan;

C.     Declaring that Defendants violated their fiduciary duties under § 404 of ERISA, 29 U.S.C. § 1104, and awarding injunctive, declaratory and other equitable relief to ensure compliance with ERISA;

D.     Declaring that Defendants failed to provide a "full and fair review" under § 503 of ERISA, 29 U.S.C. § 1133, and applicable claims procedure regulations, and that "deemed

exhaustion" under such regulations is in effect as a result of Defendants' actions, as well as awarding injunctive, declaratory and other equitable relief to ensure compliance with ERISA and its claims procedure regulations;

E.      Temporarily and permanently enjoining Defendants from continuing to pursue their actions detailed herein, and ordering Defendants to pay benefits in accordance with the terms of the Plan and applicable law;

F.      Awarding restitution for reimbursements improperly withheld by Defendants;

G.      Requiring Defendants to make full payment on all previously denied charges relating to BMC's claims for reimbursement under the Plan for the services it provided to Patient 1;

H.      Requiring Defendants to pay BMC the benefit amounts as required under the Plan;

I.      Awarding reasonable attorneys' fees, as provided by § 502(g) of ERISA, 29 U.S.C. § 1132(g);

J.      Awarding costs of suit;

K.      Awarding pre-judgment and post-judgment interest; and

L.      Awarding all other relief to which BMC is entitled.

Respectfully submitted,

**K&L GATES LLP**

One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel:  (973) 848-4000
Fax:  (973) 848-4001
*Attorneys for Plaintiff*
*IJKG Opco LLC, d/b/a CarePoint Health --*
*Bayonne Medical Center*

By:   /s/ Anthony P. La Rocco
      Anthony P. La Rocco

Dated:  August 15, 2017

<u>**CERTIFICATION UNDER L. CIV. R. 11.2**</u>

I certify that the matter in controversy is not the subject matter of any other action pending in any court or of any pending arbitration or administrative proceeding.

Respectfully submitted,

**K&L GATES LLP**

One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel:  (973) 848-4000
Fax:  (973) 848-4001
*Attorneys for Plaintiff*
*IJKG Opco LLC, d/b/a CarePoint Health --*
*Bayonne Medical Center*

By:   /s/ Anthony P. La Rocco
         Anthony P. La Rocco

Dated:  August 15, 2017

- 21 -

## <u>LOCAL RULE 201.1 CERTIFICATION</u>

I certify under penalty of perjury that the matter in controversy is not eligible for compulsory arbitration because the damages recoverable by plaintiff exceed the sum of $150,000, exclusive of interest and costs.

Respectfully submitted,

**K&L GATES LLP**

One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel:  (973) 848-4000
Fax:  (973) 848-4001
*Attorneys for Plaintiff*
*IJKG Opco LLC, d/b/a CarePoint Health --*
*Bayonne Medical Center*

By:   /s/ Anthony P. La Rocco
　　　　Anthony P. La Rocco

Dated:  August 15, 2017