UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IJKG OPCO LLC, d/b/a CAREPOINT HEALTH–BAYONNE MEDICAL CENTER,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL TRADING COMPANY, CONSOLIDATED HEALTH PLANS INC., CIGNA CORPORATION, INC., ZELIS HEALTHCARE, INC. a/k/a PREMIER HEALTH EXCHANGE, INC., FIRST CHOICE INSURANCE SERVICES, L.L.C., and STANDARD SECURITY LIFE INSURANCE COMPANY OF NEW YORK,<br><br>Defendants. | Civ. No. 17-6131 (KM) (JBC)<br><br>OPINION |

## KEVIN MCNULTY, U.S.D.J.:

The plaintiff, IJKG Opco LLC, doing business as CarePoint Health–Bayonne Medical Center ("BMC"), brings suit to recover the costs of medical care it provided to "Patient 1," who experienced severe renal complications and was hospitalized for approximately three weeks. The defendants named in the Second Amended Complaint[1] are General Trading Company ("General

---

[1] The Second Amended Complaint (DE 212), will be cited herein as "2AC." For purposes of this motion, the allegations of the 2AC are accepted as true. The pleading and motion papers will be cited as follows:

    "Motion" = Defendant Cigna's Memorandum of Law in Support of Motion to Dismiss Plaintiff's Second Amended Complaint. [DE 222.]

    "Opp." = Plaintiff IJKG OPCO's Opposition to Defendant Cigna's Motion to Dismiss the Second Amended Complaint. [DE 225]

1

Trading"), which provided the patient's employee welfare benefits plan; Cigna Corporation Inc. ("Cigna"); Consolidated Health Plans, Inc. ("CHP"), which was a third-party administrator for the plan; and Zelis Healthcare, Inc. ("Zelis"), also known as Premier Health Exchange, Inc., which was the claims contract negotiator.

BMC previously filed an Amended Complaint (DE 51), as to which Cigna filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), which I granted. (*See* Opinion ("Op."), DE 161.) BMC subsequently filed a Second Amended Complaint ("2AC"), which asserts only a breach of fiduciary duty claim against Cigna. Now before the court is Cigna's motion to dismiss the 2AC pursuant to Fed. R. Civ. P. 12(b)(6). (DE 221.) For the reasons stated herein, Cigna's motion is granted.

## I. Summary of Facts[2]

In November 2013, Patient 1 received treatment for a kidney ailment at BMC. Plaintiff's treatment resulted in a medical bill in the amount of $771,191.58. (2AC ¶¶ 23–24) General Trading, a self-funded employee welfare benefits plan (the "Plan"), provided coverage for Patient 1. (*Id.* ¶ 27.) General Trading's Plan provides coverage for "in-network benefits" for "preferred providers" and for "out-of-network benefits" for "nonpreferred providers" based on Cigna's insurance network. (*Id.*) BMC is a "nonpreferred" provider under the terms of the Plan. (*Id.*) Unlike preferred providers, non-preferred providers are reimbursed for only a percentage of the "customary and reasonable amount" of the services, supplies, and treatment provided to the patient. (*Id.* ¶ 30.) Treatments provided by nonpreferred providers for "emergency services," however, are covered "at the same coinsurance percentage or copayment

---

"Reply" = Defendant Cigna's Reply Memorandum in Further Support of the Motion to Dismiss Plaintiff's Second Amended Complaint. [DE 234.]

[2] A more detailed factual background can be found in my prior Opinion. (*See* DE 161.)

2

amount as if the services were provided by a nonpreferred provider and allowed at 100% of the billed amount." (*Id.*)

Plaintiff alleges that Cigna provided "concurrent medical review" of the treatment BMC provided to Patient 1 and "specifically authorized BMC to render the treatment it provided to Patient 1 for each of the dates of service at issue in this claim. (*Id.* ¶ 37.) According to the 2AC, Cigna referred the claim to CHP, the Plan's out-of-network claims administrator, for further processing. (*Id.* ¶ 39.) Pursuant to an Administrative Services Agreement ("ASA", also referred to as the "Cigna Cost Savings Program" in the 2AC) that Cigna entered into with CHP, and specifically, the "Out-of-Network Savings Program" Schedule attached as an exhibit to the ASA, Cigna or its designee would provide pricing services to CHP. (*Id.* ¶ 41.) Based on the a document called the "Clinical Bill Review and Audit," Cigna outsourced its pricing services to Zelis, and CHP adopted Zelis's re-pricing recommendation regarding Patient 1's bill. (*Id.* ¶ 42.) Here, General Trading reimbursed BMC for $175,358.05 of Patient 1's total bill amount, leaving an unpaid balance due of at least $595,833.53. (*Id.* ¶ 36.)

According to the explanation of benefits that CHP issued on January 29, 2014, the majority of disallowances were labeled as "discount . . . negotiated through [Zelis]" or "[e]xceeds reasonable and customary charge." (*Id.* ¶ 45.) BMC subsequently filed an appeal with CHP, which CHP denied. CHP instead directed BMC to balance bill Patient 1 for the outstanding amount. (*Id.* ¶¶ 46–47.) Patient 1 however executed an "Assignment of Benefits" form that assigned "ANY AND ALL OF [HER] RIGHTS TO RECEIVE BENEFITS ARISING OUT OF ANY COVERAGE SOURCE." (*Id.* ¶ 52 (emphasis in original))

On January 13, 2015, BMC filed a second-level appeal with CHP which was again denied. (*Id.* ¶ 48.) CHP advised BMC that appeals had to be filed directly with Zelis, because Zelis was CHP's third-party re-pricing company. (*Id.*) In contrast, General Trading's owner, Douglas Boyle, instructed BMC to re-submit the outstanding bill to Cigna because Patient 1 and General Trading

3

had paid their deductibles and co-pays in full and were no longer responsible for the remaining balance. (*Id.* ¶ 60.) BMC exhausted all avenues of relief under the Plan in order to reclaim the outstanding $595,833.53 of Patient 1's bill. (*Id.* ¶¶ 56–57.)

BMC now seeks to recover the outstanding bill amount. Count Two of the 2AC alleges that defendants General Trading, Cigna, CHP, and Zelis breached their fiduciary duties to Patient 1 by orchestrating a scheme where BMC would be underpaid for the services it provided to Patient 1, and that Cigna and other defendants would profit at BMC and Patient 1's expense, in violation of ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). (*Id.* ¶¶ 40, 80–92.) Specifically, Count Two alleges that the ASA is a mechanism which allows Cigna or its designee to receive a substantial commission in return for repricing claims for reimbursement for out-of-network carriers. (*Id.* ¶ 41.) Plaintiff alleges that in Patient 1's case, Cigna instructed CHP to contract with Zelis to re-price Patient 1's claim in exchange for a substantial re-pricing commission. (*Id.* ¶ 42.) CHP adopted Zelis's recommended re-pricing amount and CHP paid Zelis's commission. Plaintiff further alleges that under Cigna's Cost Savings Program, Zelis and CHP have an incentive to reduce the amount of claims payable to providers because their commission is based on the percentage of savings. (*Id.*) Count Two, alleging a fiduciary breach, is the only claim asserted against Cigna. BMC now sues to recover the unreimbursed balance of its bill, in the amount of $595,833.53.

## II. Discussion
### a. Standard of Review

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. Cigna, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor

4

of the plaintiff. *N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

Fed. R. Civ. P. 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also W. Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In that regard, courts may consider matters of public record and exhibits attached to the complaint. *Schmidt*, 770 F.3d at 249 ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record"); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 292 (D.N.J. 2009) (court

may consider documents referenced in complaint that are essential to plaintiff's claim).

Reliance on these types of documents does not convert a motion to dismiss into a motion for summary judgment. "When a complaint relies on a document . . . the plaintiff obviously is on notice of the contents the document, and the need for a chance to refute evidence is greatly diminished." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993).

### b. Fiduciary Duty Claim

BMC alleges that Cigna breached its fiduciary duty to the Plan beneficiaries under ERISA by devising a scheme whereby General Trading distributed Plan funds to CHP, which then paid Zelis a commission for re-pricing BMC's claim for Patient 1. BMC alleges that the scheme was not in the interest of the Plan's beneficiaries, but was intended to maximize profits for itself and other named defendants. Additionally, BMC alleges that Cigna and other defendants misled BMC by failing to inform BMC of material information, misrepresenting requirements for reimbursement under the Plan, and imposing unduly burdensome preconditions to payment not contemplated by the Plan. Cigna once again asserts that it must be dismissed from the case because the 2AC fails to factually plead that it acted in a fiduciary capacity in connection with the claim at issue.

As set forth in my prior opinions, "[i]n every case charging breach of fiduciary duty [under ERISA] . . . the threshold question is not whether the actions of some person employed to provide services under the plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to the complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Under ERISA, "an entity is a fiduciary with respect to a plan if it (i) 'exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or

6

disposition of its assets' or (ii) 'renders investment advice for a fee or other compensation . . . or has any authority or responsibility to do so,' or (iii) 'has discretionary authority or discretionary responsibility in the administration of such plan.'" *National Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 98 (3d Cir. 2012) (quoting 29 U.S.C. § 1002(21)(A)); *see also Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 413 (3d Cir. 2013) (defining fiduciary status in functional, not formal, terms). Conversely, an entity is *not* a fiduciary if it has

> no power to make any decisions as to plan policy, interpretations, practices or procedures, but perform[s] the following administrative functions for an employee benefit plan, within a framework of policies, interpretations, rules, practices and procedures made by other persons, fiduciaries with respect to the plan:
>
> (1) Application of rules determining eligibility for participation or benefits;
>
> (2) Calculation of services and compensation credits for benefits;
>
> (3) Preparation of employee communications material;
>
> (4) Maintenance of participants' service and employment records;
>
> (5) Preparation of reports required by government agencies;
>
> (6) Calculation of benefits;
>
> (7) Orientation of new participants and advising participants of their rights and options under the plan;
>
> (8) Collection of contributions and application of contributions as provided in the plan;
>
> (9) Preparation of reports concerning participants' benefits;
>
> (10) Processing of claims; and
>
> (11) Making recommendations to others for decisions with respect to plan administration.

*Grp. Hospitalization & Med. Servs. v. Merck-Medco Managed Care, LLP*, 295 F. Supp. 2d 457, 463 (D.N.J. 2003) (citing 29 C.F.R. § 2509.75-8). In order "[t]o determine whether claims are asserted against an ERISA fiduciary, the Court must ask not whether the actions of some person employed to provide services

7

under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Id.* (citing *Mulder v. PCS Health Sys., Inc.*, 216 F.R.D. 307, 313 (D.N.J. 2003) (internal quotation marks omitted)); *see also National Sec. Sys., Inc*, 700 F.3d at 98 (noting that an entity can be a fiduciary with respect to certain plan activities, but not others; the issue turns on whether some person or entity was acting as a fiduciary when taking the particular action at issue.).

The determination of whether an entity or person performs as a fiduciary is highly fact-based and dependent on the particular tasks they perform. *Neurosurgical Assocs. Of N.J., P.C. v. QualCare Inc.*, No. 12-3236, 2015 WL 4569792, at *2 (D.N.J. July 28, 2015). As a result, rulings on this issue tend "to occur after discovery rather than at the pre-discovery motion to dismiss stage." *Id.* (citing *In re Schering-Plough Corp. ERISA Litig.*, No. 03-1204, 2007 WL 2374989, at *7 (D.N.J. Aug. 15, 2007) ("Fiduciary status is a fact sensitive inquiry and courts generally do not dismiss claims at this early stage".)) Still, for the case to go forward, the complaint must "sufficiently plead[] defendants' ERISA fiduciary status." *Id.* That means that the complaint's allegations of fiduciary status must meet the *Twombly/Iqbal* threshold of factuality and plausibility.

Because Cigna is "not the insurer in the usual sense," the threshold question becomes whether Cigna *functioned* as a fiduciary with respect to Patient 1's claims. *IJKG Opco LLC v. Gen. Trading Co.*, No. CV176131KMJBC, 2018 WL 4251858, at *4 (D.N.J. Sept. 6, 2018). I noted in my prior opinion that the Plan is self-funded, CHP is the out-of-network claims administrator, and Zelis is the third party re-pricing company which adjusted and processed the claim at issue. *Id.* Previously, I granted Cigna's motion to dismiss on the pleadings because I found that BMC had not adequately alleged that Cigna acted as a fiduciary. The (First) Amended Complaint only mentioned Cigna a

handful of times, and the facts alleged were insufficient to meet the *Twombly/Iqbal* plausibility requirement.

The 2AC fails to cure the deficiencies of the Amended Complaint. True, the 2AC does provide more factual background as to the alleged scheme which BMC asserts constitutes a breach of fiduciary duty. But the 2AC still fails to plausibly allege that *Cigna* functioned as a fiduciary in connection with the claim at issue. In fact, the 2AC fails to clarify what Cigna's role was in connection with this particular claim.

The 2AC alleges the following facts to support its assertion that Cigna functioned as a fiduciary:

> 28. Under the terms of the Plan, Cigna negotiates the rates that preferred providers and nonpreferred providers are paid for emergency services, such as the services provided to Patient 1 in this case.
>
> 29. Specifically, the Plan defines a "Cigna Preferred Provider" as "a physician, hospital, or ancillary service provider <u>which has an agreement in effect with Cigna</u> to accept a negotiated rate for services rendered to the covered persons." (emphasis in original).
>
> 37. Cigna provided concurrent medical review of the treatment that BMC provided to Patient 1 and specifically authorized BMC to render the treatment it provided to Patient 1 for each of the dates of service at issue in BMC's claim.
>
> 39. Upon information and belief, Cigna confirmed that the services billed by BMC on Patient 1's claim were covered out-of-network services under the Plan and referred the claim to CHP, the Plan's out-of-network claims administrator, for further processing.
>
> 40. In fact, Cigna took these steps knowing that it had orchestrated a process by which BMC would be dramatically underpaid for the services it provided to Patient 1, and Cigna and its business partners would be enriched at BMC's and Patient 1's expense.
>
> 41. Specifically, Cigna entered into an Administrative Services Agreement ("ASA") with CHP. The "Out-of-Network Savings Program" ("Cigna's Cost Savings Program") Schedule attached as an exhibit to the ASA provides that Cigna or its designee would provide pricing services to CHP, and would receive

9

> a substantial commission in return for re-pricing claims for reimbursement to out-of-network carriers.
>
> 42. An audit or "Clinical Bill Review and Audit" document prepared by Zelis confirms that Cigna made the decision to outsource its re-pricing duties under the ASA to Zelis by instructing CHP to contract with Zelis, which in turn earned a substantial re-pricing commission, or "re-pricing fee." CHP adopted Zelis's recommended re-pricing without performing any additional analysis. CHP paid Zelis's commission for re-pricing Patient 1's claims out of General Trading Plan funds. Under Cigna's Cost Savings Program, Zelis and CHP are incentivized to drastically reduce claims amounts payable to providers because the commission they receive is calculated as a percentage of savings.
>
> 48. [During the claim appeal process] [t]he CHP representative stated that Patient 1's claim was paid by CHP based on the out-of-network coverage provided by the Cigna network and that no further payment would be made.

(2AC ¶¶ 28, 29, 37, 39–42, 28; *see also* Opp. at 11.)

The 2AC concedes that the claim at issue concerned an out-of-network provider; that it was referred to CHP, the Plan's out-of-network claims administrator; and that Cigna was not involved in processing the claim. (*See* 2AC ¶¶ 39, 42.) Specifically, the "'Clinical Bill Review and Audit' document prepared by Zelis confirms that *Cigna made the decision to outsource its re-pricing duties* under the ASA to Zelis by instructing CHP to contract with Zelis the outsourced its re-pricing duties to Zelis. . . ." (*Id.* (emphasis added).) Acknowledging that CHP processed the claim and that Cigna outsourced its review of out-of-network claims to Zelis cuts against Plaintiff's argument that Cigna had any discretionary authority or control with respect to the management or disposition of the Plan's assets or in the administration of the Plan with respect to the claim.

Plaintiff points to the fact that Cigna negotiated with healthcare providers the rates at which they would be paid for services rendered to covered persons under the Plan. (*See* 2AC ¶ 28) Those rates, however, were specifically negotiated for in-network providers, not out-of-network providers

like BMC. The Plan explicitly notes that nonpreferred providers do "not have an agreement in effect with the Cigna Preferred Provider Organization." (Ex. A, DE 69-2 at 22.)[3] This fact does not suggest that Cigna was a fiduciary with respect to out-of-network claims.

BMC asserts that the claim should have been paid at Cigna's in-network rates since the healthcare provided to Patient 1 was for "emergency services." However, the fact that BMC *seeks* to have the claim paid at Cigna's in-network rate does not suggest that Cigna had any involvement with the administration or payment of Patient 1's out-of-network claim. As stated above, CHP, not Cigna, was responsible for the administration of out-of-network services; even on BMC's theory, it would have been CHP which was required to apply the in-network rates.

Plaintiff also asserts that Cigna is a fiduciary because Cigna (a) provided "concurrent medical review of the treatment that BMC provided to Patient 1 and specifically authorized BMC to render the treatment it provided to Patient 1" and (b) "confirmed that the services billed by BMC on Patient 1's claim were covered out-of-network services under the Plan." (2AC ¶¶ 37, 39.) But the Supreme Court has distinguished between "pure 'eligibility decisions' [which] turn on the plan's coverage of a particular condition or medical procedure for its treatment" from "treatment decisions" which consist of "choices about how to go about diagnosing and treating a patient's condition." *Pegram*, 530 U.S. at

---

[3] Although courts generally do not consider documents outside the pleadings at the motion to dismiss stage, it may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d at 287 (emphasis and citations omitted), because the plaintiff is on notice of the contents the document, and the need for a chance to refute evidence is greatly diminished." *Pension Benefit Guar. Corp.*, 998 F.2d at 1196–97. Paragraph 28 of the 2AC explicitly refers to the terms of the Plan. Reliance on the language in the Plan therefore does not convert this motion to dismiss into one for summary judgment. *See* Part II.a, *supra.*

228, 120 S. Ct. 2143, 2154 (2000). The latter, treatment-based (as opposed to coverage-based) decisions are not fiduciary in nature. *Id.*[4]

Finally, Plaintiff alleges that Cigna is a fiduciary by explaining that Mr. Boyle, the Plan administrator, repeatedly tried to involve Cigna in the appeals process by sending correspondence to Cigna and referring BMC to Cigna for reprocessing and payment of the claim. (*Id.* ¶¶ 57–61.) In my prior opinion, I noted that Cigna did not attain the status of the plan or claims administrator or take on a fiduciary role "merely because General Trading sent it an email." (DE 161 at 7.) The fact that Mr. Boyle attempted to involve Cigna in the appeals process does not constitute a plausible allegation that Cigna is a fiduciary with respect to the Plan. More is needed to demonstrate that Cigna had any sort of discretionary authority with respect to this claim. As a result, Plaintiff has not succeeded in alleging that Cigna acted as a fiduciary with respect to the administration and disposition of Patient 1's claims.

Because I have found that BMC has not plausibly alleged that Cigna is a fiduciary, I do not reach Points III and IV of Cigna's Motion to Dismiss on two

---

[4] For the reasons given in text, the allegation is therefore legally inadequate under *Pegram, supra.*

Inspection of the actual decision at issue confirms that it is treatment, not coverage. The decision to which plaintiff refers is embodied in a Decision Summary sent to Patient 1 by Cigna. It establishes that Cigna authorized extension of Patient 1's hospital stay, based on a *medical* review of all the information provided to them; it does not reflect a review of whether such treatment would be covered by the Plan. (*See* Ex. A, DE 109-2.) Indeed, the Decision Summary explicitly states that the authorization "does *not* guarantee payment of benefits under [the] plan." (*Id.* (emphasis added).)

Reference to the Decision Summary document, to the extent it may be required, is proper and does not transform this motion to dismiss into one for summary judgment. A plaintiff should not be able to "extract[] an isolated statement from a document and plac[e] it in the complaint" while shielding the remainder of the document from scrutiny. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Although the 2AC does not explicitly cite the Decision Summary document, the claims in the 2AC are based on that document. *See id.* Moreover, a plaintiff "cannot prevent a court from looking at the texts of the documents on which its claim is based on by failing to attach or explicitly cite them." *Id. See* Part II.a, *supra.*

alternative grounds: namely, that the assignment of benefits from Patient 1 to BMC is a limited one, and that Plaintiff's fiduciary duty claim is redundant and thus should be dismissed.

## IV. Conclusion

For the foregoing reasons, Cigna's motion to dismiss for failure to state a claim (DE 221) is GRANTED. Because it appears that further amendment would be futile, this dismissal of the Second Amended Complaint as against Cigna is entered with prejudice.

An appropriate order follows.

Dated: March 6, 2020

Kevin McNulty
United States District Judge